IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JERRY EASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:17-cv-01451-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

Plaintiff, Jerry Easter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Easter timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Easter was fifty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 18.) He has a high school education and past work experience as a painter. (Tr. at 75, 186.) Mr. Easter claims that he became

1

disabled on July 1, 2014, due to depression, anxiety, chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), a bad back, and bad knees. (Tr. at 185.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first determined that Mr. Easter has not engaged in SGA since October 8, 2014, the SSI application date. (Tr. at 13.) The ALJ found Plaintiff to have the following severe impairments: history of drug and alcohol abuse, major depressive disorder, anxiety disorder, borderline personality disorder, mild COPD, and status post double coronary artery bypass grafting secondary to coronary artery disease. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Mr. Easter has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations: he is unable to climb ladders, ropes, or scaffolds; he should avoid concentrated exposure to extreme heat, extreme humidity, and pulmonary irritants such as fumes, odors, dust, gases, chemicals and

poorly ventilated areas; he should avoid exposure to unprotected heights and hazardous machinery; and he is limited to unskilled work and should have no direct contact with the general public and is limited to occasional interaction with coworkers. (Tr. at 14.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at steps four and five of the sequential evaluation process that Plaintiff was unable to perform his past relevant work but could make an adjustment to other jobs that existed in significant numbers in the national economy, such as hand packager, automatic machine tender, and box maker. (Tr. at 18-19.) The ALJ concluded that the Plaintiff was not under a disability as defined by the Social Security Act since the date of his application. (Tr. at 19.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are

supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Easter alleges that the ALJ's decision should be reversed and remanded because the ALJ erroneously found his subjective pain testimony not entirely credible, which, according to Mr. Easter, led the ALJ to improperly determine his RFC.

An RFC is an assessment of a claimant's ability to perform work and "is the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 416.945(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 416.946(c); Social Security Ruling ("SSR") 96-5p; *see also* 20 C.F.R. § 416.927(d)(2) (stating that assessment of claimant's RFC is reserved for Commissioner); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ( "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors"). In assessing a claimant's RFC, the ALJ will consider all of a claimant's "medically determinable impairments of which [the ALJ] is aware." 20 C.F.R. § 416.945(a).

The RFC evaluation is based on all relevant evidence in the case record, including statements made by the claimant about limitations as a result of

symptoms such as pain. *See* 20 C.F.R. § 416.945(a). However, statements about pain or other symptoms, without more, will not establish that a claimant is disabled; there must be objective medical evidence that shows a claimant has medical impairments that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. § 416.929(a). A claimant's symptoms won't be found to affect his ability to perform work activities unless "medical signs or laboratory findings show that a medically determinable impairment(s) is present." *Id.* If "the medical signs or laboratory findings show that [a claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [a claimant's] symptoms" then the ALJ must evaluate the intensity and persistence of the alleged symptoms to determine how they limit the claimant's ability to work. *Id.*

In applying these standards, the Eleventh Circuit has articulated a "pain standard" that requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210; *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002). An ALJ may

discredit subjective testimony but must provide "explicit and adequate reasons for doing so." *Wilson* 284 F.3d at 1225. When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, Plaintiff filled out a Disability Report in which he alleged that he suffered from depression, anxiety, bronchitis, COPD, and back and knee problems. (Tr. at 184-91). At his hearing, Plaintiff claimed that his most severe problems were COPD and bronchitis, which caused difficulty breathing, and that, after his bypass surgery in 2015, he had low energy levels and his breathing problems worsened. (Tr. at 15, 58-60, 69-70). He testified that he had problems breathing even while lying down. (Tr. at 59.) Plaintiff also testified that his hands locked up and went numb on a daily basis, he had difficulty bending due to back pain, and that his left ankle "g[ave] away" a couple of times per week. (Tr. at 15, 62-63). In addition, Plaintiff alleged that he was unable to walk and could stand for less than five minutes and sit for less than 30 minutes at a time, walk less than a block, and lift no more than 50 pounds, though that was "pushing it" and it "would have to be a one-time thing." (Tr. at 15, 64-65, 73). He said that due to depression, he had difficulty focusing, concentrating, and staying on task. (Tr. at 67.) He said that due to anxiety, he had a fear of crowds and people and feared going certain places. (Tr.

at 60.) He testified that for the past few years, he has had five to ten panic attacks per month, which worsened when he stopped drinking. (Tr. at 60-61.) He said that he used to drink a gallon of alcohol a day but has maintained sobriety for the past couple of years. (Tr. at 56-57.) He said that the medication he took for mental health issues caused dizziness, lethargic feelings, and instability while walking. (Tr. at 61.)

The ALJ stated that, after careful consideration of the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause some functional limitations, but Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. at 15). The ALJ thus properly applied the pain standard, and as will be explained below, her determination that Plaintiff retained the RFC to perform medium work with additional limitations is supported by substantial evidence.

In explaining her credibility finding, the ALJ took notice of the lack of medical evidence containing any diagnosis or treatment for any impairment related to Plaintiff's alleged back, knee, or hand problems. (Tr. at 15). The ALJ pointed out that, since Plaintiff's alleged disability onset date of July 1, 2014, physical examinations by various treating sources have consistently revealed normal

mobility and muscle strength throughout all extremities, normal gait and station, and no motor, sensory or neurological deficits. (Tr. at 15-16, 163, 531, 668, 671, 674-75, 678, 681, 684, 687, 690-91, 735, 741, 744). Thus, the ALJ concluded that Plaintiff's alleged back, knee, and hand problems were not medically determinable impairments. (Tr. at 16.)

With respect to Plaintiff's alleged bronchitis and COPD, the ALJ observed that, since Plaintiff's alleged disability onset date, he had not had an exacerbation of bronchitis or COPD requiring physician intervention. (Tr. at 16). The ALJ pointed out that an August 2015 chest x-ray was unremarkable and showed no evidence of active pulmonary disease. (Tr. at 16, 656). The ALJ noted that medical records from Arianne Bennett-Venner, M.D., a pulmonologist, revealed that, from May 2015 through April 2016, pulmonary examinations consistently demonstrated a normal respiratory effort, normal breath sounds, good air movement throughout the lungs, and no evidence of dyspnea, wheezing, rales or rhonchi. (Tr. at 16, 666-91). The ALJ further remarked that pulmonary function testing performed in June 2015 showed only mild COPD, and pulmonary examinations from December 2015 through August 2016 continued to show normal respiration and that Plaintiff's lungs were clear to auscultation bilaterally. (Tr. at 16, 705-06, 740-45). The ALJ further noted that, although the record was held open after the hearing in order for

Plaintiff's representative to submit pulmonary function testing, no such records were ever submitted and no additional time was requested. (Tr. at 16, 78).

As for Plaintiff's cardiovascular problems, the ALJ took note of the fact that in August 2015, Plaintiff underwent double coronary artery bypass grafting due to coronary artery disease. (Tr. at 16, 750-51). However, in September 2015, chest x-rays showed satisfactory coronary artery bypass grafting and, when seen for routine postoperative follow-ups in December 2015 and August 2016, Plaintiff had no cardiovascular complaints and cardiovascular examinations were normal. (Tr. at 16, 740-45, 759).

Concerning Plaintiff's alleged depression and anxiety and past history of alcohol abuse, the ALJ noted that the medical evidence prior to the alleged onset date showed that Plaintiff had "required multiple hospitalizations for . . . symptoms associated with depressive and anxiety disorder." (Tr. at 16.) However, as noted by the ALJ, since the alleged onset date, Plaintiff had only required hospitalization once for treatment of anxiety and depression in 2014, at which time Plaintiff admitted to drinking four to 15 beers per day. (Tr. at 16, 711-31.) Further, mental examinations since the alleged onset date "consistently [showed Plaintiff] to have dysphoric to euthymic mood . . . adequate attention and concentration . . . good motivation, and a good energy level." (Tr. at 16, 664-731.) Medical records from

Dr. Bennett-Venner, the pulmonologist, further revealed that during the treatment period from May 2015 to April 2016, Plaintiff's memory was intact, he was fully oriented in all spheres, exhibited normal mood and affect, and had good judgment and insight. (Tr. at 16, 239-95.)

In addition to the unremarkable clinical findings in the record, the ALJ considered that Plaintiff's Disability Report indicates that he reported that he stopped working because he was laid off from his last job, not because of his medical condition. (Tr. at 17, 185). The ALJ further pointed out that, despite his contrary testimony, Plaintiff denied experiencing medication side effects elsewhere in the record, and the medical evidence failed to document medication side effects. (Tr. at 17, 61, 211, 220). In addition, the ALJ noted that no medical source had indicated that Plaintiff experienced debilitating pain or other subjective symptoms, nor had any placed any significant limitations on Plaintiff's activity. (Tr. at 17). *See* 20 C.F.R. §§ 416.927, 416.929(a), 416.945(a)(3); SSR 96-8p; *see also, e.g., Powell v. Comm'r of Soc. Sec.*, 571 F. App'x 914, 917 (11th Cir. 2014) (noting that the plaintiff "did not present any opinions from a treating or examining physician indicating that she was disabled or had limitations greater than those reflected in the RFC"); *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (noting that "none of the medical sources indicated that [the plaintiff] had any significant

functional limitations, let alone any disability" in discussing evidence that supported ALJ's RFC finding and credibility determination). In light of this evidence, the ALJ determined that Plaintiff was not as limited as he alleged but was capable of greater sustained capacity. (Tr. at 14-18).

Plaintiff specifically asserts that substantial evidence does not support the ALJ's conclusion that he retained the ability to perform medium work and that he instead was limited to sedentary work, but he relies upon nothing more than his own hearing testimony in support of this assertion. The ALJ, however, based her assessment of Plaintiff's RFC on all of the relevant evidence in the record, in accordance with the Commissioner's regulations. *See* 20 C.F.R. § 416.945(a) (RFC is assessed "based on all the relevant evidence in [the] case record").

Plaintiff also argues that follow-up treatment notes after his August 2015 bypass surgery demonstrating that he had no cardiovascular complaints, as well as post-operative cardiovascular examinations that were normal, "do not rule out [Plaintiff's] complaints of chronic fatigue" or contradict Plaintiff's allegation that his physicians advised him to limit his lifting after surgery. Plaintiff, however, bears the burden of providing sufficient evidence to support his subjective complaints of disabling symptoms. *See* 42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i); 20 C.F.R. §§ 416.912(a), 416.929(a). For all of the reasons stated above, Plaintiff

has not met that burden in this case. In sum, the medical and other evidence provides substantial evidence to support the ALJ's evaluation of Plaintiff's subjective statements.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Easter's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 4, 2019.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704